UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MICHAEL DEL GIUDICE, WEICHERT        :    15 Civ. 7330 (LTS) (JCF)
ENTERPRISE II, LLC, JOSEPH LAMBERT,  :
WARREN RUBIN, and BERNICE WOLLMAN,   :       MEMORANDUM
                                     :       AND  ORDER
            Plaintiffs,              :
                                     :
     - against -                     :
                                     :   ┌─────────────────────────────┐
W. SCOTT HARLAN, JAMES MAIZ, SHANE   :   │ USDS SDNY                   │
LITTS, and WILLIE ZAPALAC,           :   │ DOCUMENT                    │
                                     :   │ ELECTRONICALLY FILED        │
            Defendants.              :   │ DOC #: _____          │
- - - - - - - - - - - - - - - - - - -:   │ DATE FILED: 9│22│16         │
JAMES C. FRANCIS IV                      └─────────────────────────────┘
UNITED STATES MAGISTRATE JUDGE

      In this case, each of the parties is a member of Rockland

Capital, LLC ("Rockland"), a private equity fund manager.  The

plaintiffs -- Michael Del Giudice, Weichert Enterprise II, LLC

("Weichert"), Joseph Lambert, Warren Rubin, and Bernice Wollman

-- allege, among other causes of action, that the defendants -- W.

Scott Harlan, James Maiz, Shane Litts, and Willie Zapalac --

breached the agreement governing the operation of the firm.  The

plaintiffs have filed a motion to compel the defendants to produce

documents exchanged between members of Rockland's board of

directors and Rockland's counsel, Bracewell LLP (formerly known as

Bracewell & Giuliani LLP).  The motion is granted in part and

denied in part.

Background

Rockland is a Delaware limited liability company that specializes in energy-related investments. (Second Amended Complaint ("Complaint"), ¶ 8; Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Production of Privileged Bracewell Documents ("Def. Memo.") at 2). The parties comprise the three classes of members of Rockland: the defendants, who are energy sector experts and manage the company and its investments, are Class A-1 members (Complaint, ¶ 12; Def. Memo. at 2); the plaintiffs are professional investors who, at the relevant time, largely made up Class A-2 and Class B (Complaint, ¶ 12; Def. Memo. at 2).[1] Each of the four defendants occupies a seat on the company's board of directors. (Fourth Amended and Restated Operating Agreement of Rockland Capital LLC ("Operating Agreement"), attached as Exh. B to Declaration of Joshua B. Katz dated Oct. 13, 2015, § 7.3(b)). From March 16, 2013, until April 1, 2015, Mr. Del Giudice and Mr. Lambert each held one seat and Weichert (through its chief executive Gerald Crotty) held two

---

[1] I say "largely" because the defendants "also hold a small portion of the Class B membership interests." (Complaint, ¶ 12). I say "at the relevant time" because one of the plaintiffs, Mr. Del Giudice, reportedly no longer has a membership interest in the firm. (Def. Memo. at 12; [Redlined] Proposed Third Amended Complaint ("Proposed Complaint"), attached as Exh. C to Declaration of Joseph Lambert dated March 3, 2016, ¶ 39).

seats.   (Operating Agreement at 7 & § 7.3(b)).   Since April 1, 2015, Mr. Del Giudice is no longer a director, and Mr. Crotty and Mr. Lambert each hold one seat.   (Operating Agreement at 4 & § 7.3(c); Def. Memo. at 3).

The Operating Agreement governs the priority of payments of "Cash Available for Distributions" (defined as "cash on hand in [Rockland] accounts less the capital reserves required") to members according to their class.   (Operating Agreement at 3).  The "Class A-1 Preference Amount" for each fiscal year was to be determined prior to the beginning of the next fiscal year by a majority vote of the board of directors upon a recommendation made by a four-director committee.   (Operating Agreement at 4).   Until April 1, 2015, Mr. Crotty wielded an additional (tie-breaking) vote on the Class A-1 Preference Amount.   (Operating Agreement, § 7.6(c)(ii); Declaration of Joseph Lambert dated July 29, 2016 ("Lambert Decl."), ¶ 3).   Pursuant to Section 6.1, the amount was to be paid on or before January 31 of the following year, after which the remaining Cash Available was to be allocated to Class A-2 and Class B members according to a formula included in the agreement.   (Operating Agreement, § 6.1).   The plaintiffs allege that the defendants "failed to timely assemble the information necessary" to determine the Class A-1 Preference Amount to be distributed in January 2014.   (Complaint, ¶ 16).   Consequently,

3

pursuant to the Operating Agreement's provision governing acting without a meeting of the board of directors, in September 2014 and January 2015, the Class A-2 and Class B directors set the Class A-1 Preference Amount for 2013 and 2014, respectively, and directed distribution of the Cash Available to all classes.  (Complaint, ¶¶ 18, 20; Lambert Decl., ¶ 4).  The defendants, however, failed to make the payments, and in April 2015, purportedly in violation of the Operating Agreement, set a different (and larger) Class A-1 Preference Amount for 2014, set a smaller (by $844,000) payout to Class A-2 and Class B members, and distributed the money. (Complaint, ¶¶ 19, 21-22; Lambert Decl., ¶ 4).

Meanwhile, in the course of discussions geared toward resolving these issues, Mr. Harlan informed Mr. Del Giudice, Mr. Lambert, and Mr. Crotty that Mr. Harlan had communicated with Bracewell about the parties' disputes. (Lambert Decl., ¶ 5; E-mail of Scott Harlan dated Jan. 30, 2015, attached as part of Exh. 1 to Lambert Decl.).  Mr. Del Giudice requested "copies of all written communications between counsel and all employees of Rockland [] concerning Member distributions and compensation since January 1, 2014."  (E-mail of Michael Del Giudice dated Feb. 23, 2015, attached as Exh. 2 to Lambert Decl.).  Mr. Harlan provided two emails he had sent to Alan Rafte, an attorney at Bracewell, referencing a phone call on January 27, 2015, and stated that

further written correspondence would follow, although most of the advice received "ha[d] been by phone." (Email chain dated Jan. 27, 2015, to Feb. 23, 2015, with attachments, attached as Exh. 3 to Lambert Decl.). After transmitting another batch of emails to Mr. Del Giudice, Mr. Crotty, and Mr. Lambert, Mr. Harlan asserted he had disclosed "all the e-mails that [he] ha[d] exchanged with Bracewell on the subject [of member distributions and compensation] since the [the matter] was initiated on January 27." (Lambert Decl., ¶ 10; Email chain dated Feb. 24, 2015 to March 4, 2015, attached as Exh. 5 to Lambert Decl.). Mr. Maiz and Mr. Zapalac later confirmed that they "had not had any separate written correspondence with Bracewell on the subject." (Email chain dated March 4, 2015, attached as Exh. 6 to Lambert Decl.).

Attempts to resolve the dispute without litigation failed. At the end of July 2015, the plaintiffs filed an action in New York County Supreme Court and the defendants promptly removed it to this Court. (Notice of Removal). The operative complaint alleges that the defendants breached the Operating Agreement by (1) failing to provide information that would have allowed distributions to be made under Section 6.1, (2) failing to abide by the September 2014 and January 2015 "written consents" regarding distributions, and (3) adopting the April 2015 resolution setting distributions. (Complaint, ¶¶ 25-30). In addition, the

plaintiffs seek a declaratory judgment that Mr. Del Giudice did not default under the Operating Agreement (which would allow his interest in Rockland to be redeemed for $1.00) by engaging in prohibited "Competitive Business."[2]   (Complaint, ¶¶ 35-40; Operating Agreement, § 7.9(b) & (c)).

The plaintiffs' first request for documents sought, among other things, communications between Rockland and its counsel on a number of subjects, including the Operating Agreement, the decision not to make distributions pursuant to the September 2014 and January 2015 written consents, the April 2015 board resolution, and a January 19, 2016 board resolution setting distributions for fiscal 2015.  (Notice of Depositions and Request for Production of Documents, attached as Exh. 8 to Lambert Decl., Request Nos. 9-13).  The defendants objected to producing their communications with Bracewell and withheld over 170 of them based on attorney-

---

[2] The Honorable Laura Taylor Swain, U.S.D.J., dismissed the plaintiffs' cause of action for conversion.  (Memorandum Order dated March 25, 2016).  A motion to amend the complaint currently pending before Judge Swain seeks to modify the declaratory judgment cause of action to state a claim for recovery of Mr. Del Giudice's ownership interest in Rockland, and to add claims for breach of the Operating Agreement in connection with the Class A-1 Preference Distribution of January 2016, the September 30, 2015 closing of the New York Office, and Mr. Harlan's refusal to provide certain requested information to Mr. Lambert and Mr. Crotty, as well as for a determination that the defendants may not use Rockland's funds to pay expenses incurred in defending this action. (Proposed Complaint, ¶¶ 34-60).

client privilege.[3]  (Defendants' Privilege Log at 3-13).  Those emails (hereinafter, the "Bracewell Documents") are the subject of the plaintiffs' motion to compel.

Discussion

    A.   <u>Choice of Law</u>

The parties engage in a half-hearted dispute about what state's law should determine whether the attorney-client privilege applies to the documents at issue.  The plaintiffs contend that the Court may apply either Delaware law or New York law because they are materially indistinguishable.  (Pl. Memo. at 5-6).  The defendants insist that New York law and Delaware law are not congruent and that the proper choice-of-law analysis compels application of New York law.  (Def. Memo. at 8-9).

First, it appears that the Delaware law differs from New York law in material ways.  The plaintiffs rely on <u>Kirby v. Kirby</u>, 1987 WL 14862 (Del. Ch. July 29, 1987), and its progeny to support their position that the directors of Rockland are entitled to access

---

[3] The plaintiffs state that the number of Bracewell emails withheld is 173.  (Plaintiff's Memorandum of Law in Support of Motion to Compel Production of Bracewell Documents ("Pl. Memo.") at 2).  The defendants' privilege log lists 175 protected emails dated on or after March 24, 2015; five of these do not appear to include any Bracewell attorney as sender or recipient and claim work product immunity rather than attorney-client privilege. (Defendants' Privilege Log, attached as Exh. 9 to Lambert Decl., Entries 27, 71, 117, 193, 196).

Bracewell's advice. (Pl. Memo. at 6-7). The defendants point out, however, that some New York courts have disagreed with that line of cases. See Nunan v. Midwest, Inc., 11 Misc. 3d 1052(A), 814 N.Y.S.2d 891, 2006 WL 344550, at *7 (Monroe Cty. Sup. Ct. Jan. 10, 2006) (calling Kirby "discredited authority"); cf. Fitzpatrick v. American International Group, Inc., 272 F.R.D. 100, 105-09 (S.D.N.Y. 2010) (declining to follow Kirby in determining federal common law of privilege); but see People ex rel. Spitzer v. Greenberg, 50 A.D.3d 195, 203, 851 N.Y.S.2d 196, 204 (1st Dep't 2008) (Friedman, J., concurring) (finding "absence of any conflict between New York law and Delaware law" and citing Kirby). In light of these cases, I cannot say with authority that the law of the two states is materially identical. A choice-of-law analysis is therefore necessary.

However, the defendants' analysis is flawed. They recognize that in a diversity case a federal court faced with the possibility that the law of two or more states might govern applies the choice-of-law rules of the forum state to answer the question. (Def. Memo. at 8); Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 151 (2d Cir. 2013) ("[Pursuant to the Rules of Decision Act, 28 U.S.C. § 1652,] a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits to determine the rules of decision that would

8

apply if the suit were brought in state court."); <u>Financial Technologies International, Inc. v. Smith</u>, No. 99 Civ. 9351, 2000 WL 1855131, at *2 (S.D.N.Y. Dec. 19, 2000). Nevertheless, they inexplicably fail to apply New York choice of law rules to the privilege issue. Rather, they state that "New York deems the attorney-client privilege to be a matter of procedure, and therefore '[t]he law of the place where the evidence in question will be introduced at trial or the location of the discovery proceeding is applied when deciding privilege issues.'" (Def. Memo. at 8 (quoting <u>JP Morgan Chase & Co. v. Indian Harbor Insurance Co.</u>, 98 A.D.3d 18, 25, 947 N.Y.S.2d 17, 23 (1st Dep't 2012))). But federal law deems the privilege to be a substantive matter, <u>see, e.g.</u>, <u>Tudor Insurance Co. v. McKenna Associates</u>, No. 01 Civ. 0115, 2003 WL 21488058, at *1 (S.D.N.Y. June 25, 2003) (noting that in diversity cases state law applies to substantive issues such as attorney-client privilege), and, indeed, if it were truly "a matter of procedure" under <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938), this Court would not apply state law. <u>See Liberty Synergistics</u>, 718 F.3d at 151-53 (stating that, "after using state conflict-of-laws principles to ascertain the rules of decision that would apply in the state courts of the federal forum, federal courts apply those state rules of decision that are 'substantive' under <u>Erie</u>," regardless of "whether that rule is

understood to be 'procedural' or 'substantive' as a matter of state law").

In contract cases in New York courts, the "'center of gravity' or 'grouping of contacts' [is] the appropriate analytical approach" to determine "which State has 'the most significant relationship to the transaction and the parties.'" Zurich Insurance Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317, 618 N.Y.S.2d 609, 612 (1994) (quoting Restatement (Second) of Conflict of Laws § 188(1)).  However, New York's Court of Appeals has recently reaffirmed that "courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract." Ministers & Missionaries Benefit Board v. Snow, 26 N.Y.3d 466, 474, 25 N.Y.S.3d 21, 26 (2015), reargument denied, 26 N.Y.3d 1136, 27 N.Y.S.3d 499 (2016); see also FPP, LLC v. Xaxis US, LLC, No. 14 Civ. 6172, 2016 WL 1733466, at *2 (S.D.N.Y. Apr. 29, 2016) (applying New York law to question of privilege pursuant to underlying contract's choice-of-law provision); Financial Technologies, 2000 WL 1855131, at *2 (stating, "Under New York's rules, a contractual choice of law provision will be honored as long as the chosen jurisdiction has a substantial relationship to the parties or their performance, and policy considerations of New York law are not violated," and collecting cases).  That is, under New York state law, where the

10

contract sued upon contains a choice-of-law provision, that choice will generally govern what state's privilege law applies.  Here, the Operating Agreement specifies Delaware law.  (Operating Agreement, § 12.5).  Delaware law therefore applies to issues of attorney-client privilege.[4]

   B.   Legal Standard

   Under Delaware law, the attorney-client privilege "protects the communications between a client and an attorney acting in his professional capacity where the communications are intended to be confidential, and the confidentiality is not waived," in order "to foster the confidence of the client and enable[] him to communicate without fear in order to seek legal advice."  Moyer v. Moyer, 602 A.2d 68, 72 (Del. 1992) (quoting Riggs National Bank of Washington, D.C. v. Zimmer, 355 A.2d 709, 713 (Del. Ch. 1976)).  A corporation or other business entity that has sought legal advice may assert the privilege.  See, e.g., Grimes v. DSC Communications Corp., 724 A.2d 561, 568 (Del. Ch. 1998).  The party seeking to protect a communication from disclosure must establish that the privilege applies.  Id.  However, "[o]nce a party has met its burden of establishing privilege, the burden shifts to the other party to demonstrate an exception to, or waiver of, the privilege."  In re

---

   [4] Peculiarly, neither side mentions the Operating Agreement's choice-of-law provision in its submissions.

Teleglobe Communications Corp., Nos. 02-11518, 04 CV 1266, 2006 WL
2568371, at *9 (D. Del. Feb. 22, 2006), aff'd, 2006 WL 2567880 (D.
Del. June 2, 2006).

    C.    Access to Bracewell Documents

    Kirby v. Kirby involved an action in the Delaware Court of
Chancery "among four siblings over the control of a charitable
[foundation]." 1987 WL 14862, at *1. As well as being the sole
member of the foundation, Fred Kirby, one of the defendants, sat
on the foundation's board of directors with the three plaintiffs.
Id. Unbeknownst to the other directors, Fred Kirby elected his
wife and four children as members. Id. at *2. When the plaintiffs
learned of this, they passed a resolution (acting as directors)
stating that the directors were, and could be, the only members of
the foundation. Id. Fred Kirby and his wife and children
retaliated by holding "a meeting of members at which they purported
to remove [the] plaintiffs from the board of directors and elect
themselves to it." Id. The plaintiffs sued, seeking a
determination that they, along with Fred Kirby, were the sole
directors of the entity; they also charged Fred Kirby with "various
breaches of fiduciary duty in his management of the Foundation's
assets and in his election of his wife and four children (the
remaining defendants) as members of the Foundation." Id. at *1.

    During discovery, the plaintiffs moved to compel the

defendants to produce certain documents withheld pursuant to attorney-client privilege. Id. at *6. Vice Chancellor Berger framed the question presented as "whether the attorney-client privilege may properly be invoked by the corporation against those who were admittedly its directors at the time the documents were prepared," and answered that it could not. Id. at *7. He reasoned that, at the time the legal advice was given, "the directors, collectively, were the client," and therefore "all responsible for the proper management of the corporation." Id. The court further found that the right to access those documents created while the plaintiffs were directors did not expire when they were purportedly removed as directors. Id.

The vice chancellor differently assessed the plaintiffs' right to access documents generated after they were removed as directors. Noting that "[u]nder the circumstances, it would [] be a 'fiction' to say that plaintiffs were the clients to whom legal advice was rendered," he asked whether the plaintiffs' claims could be analogized to the claims in a shareholder derivative action. Id. The court rejected the defendants' argument that the plaintiffs sought "solely to benefit themselves at the expense of members and directors of the Foundation." Id. Rather, he found that claims brought under the Delaware statute allowing suits to determine "the validity of any election, appointment, removal or

13

resignation of any director or officer," Del. Code Ann. tit. 8, § 225, had "long been recognized as serving the interests of the corporation as a whole." Kirby, 1987 WL 14862, at *7. As a result, the withheld documents could be disclosed upon a showing of good cause. Id. at *8.

A somewhat similar question was addressed in Moore Business Forms, Inc. v. Cordant Holdings Corp., Civ. A. Nos. 13911, 14595, 1996 WL 307444 (Del. Ch. June 4, 1996). Pursuant to a series of agreements, Moore Business Forms ("Moore") was entitled to designate one director each to the board of Cordant Holdings Corp. ("Holdings") -- a wholly-owned subsidiary of Holdings created "as a vehicle to effectuate the management buy-out of Cordant [Inc.]" ("Cordant") -- and Cordant. Id. at *1. Moore also owned approximately 37% of the outstanding stock of Holdings, which Holdings could buy back on sixty days' notice. Id. Without informing Moore or its designated director Ronald Rogers, the Holding board's two independent directors began negotiations to finance a stock repurchase. Id. at *2. Holdings and Cordant then gave Moore notice of the repurchase and tendered the fair market value of Moore's shares. Id. Moore rejected the tender, contending that it did not comply with the parties' agreements. Id.

Moore filed suit challenging the stock repurchase and

14

"contest[ing] Holdings' refusal to seat Moore's designee to the Holdings' board of directors." Id. at *1. Moore then asked the court to determine that attorney-client privilege was inapplicable to legal advice furnished to the Holdings directors (other than Mr. Rogers) regarding the repurchase. Id. at *3. Vice Chancellor Jacobs first found that, pursuant to a stockholder's agreement, Moore was entitled to the same information that its designee, Mr. Rogers, would have been entitled to. Id. at *4. He then addressed whether "the attorney-client privilege . . . bar[red] Mr. Rogers from access to the information that was disclosed to all other Holdings' directors." Id. at *3. The vice chancellor agreed with the plaintiff that Delaware case law, including Kirby, supported the position that "a corporation cannot assert the privilege to deny a director access to legal advice furnished to the board during the director's tenure." Id. at *4. In doing so, he rejected the notion "that a board may assert the attorney-client privilege against a stockholder's director-designee in cases where the corporation's interests come into conflict with the interests of the stockholder." Id. at *5.

Kirby and Moore Business Forms appear to dictate that, under Delaware law, Mr. Lambert and Mr. Crotty are each entitled to all attorney-client communications that were generated during the

period when he was a director.[5]  Citing New York law, the
defendants contend that the documents may be withheld because (1)
the plaintiffs are suing to enforce their own interests rather
than acting on behalf of Rockland (Def. Memo. at 9-11) and (2) the
plaintiffs "are or may be adverse" to Rockland (Def. Memo. at 11-
12 (emphasis omitted) (quoting Barasch v. Williams Real Estate
Co., 104 A.D.3d 490, 492, 961 N.Y.S.2d 125, 127 (1st Dep't 2013))).
The problem is that the Delaware cases do not make those
distinctions when addressing the right of a director to legal

_____

[5] The plaintiffs seem to have abandoned or waived any claim
under this theory that Mr. Del Giudice is entitled to access
attorney-client communications from the time when he was a
director.  First, their opening brief suffers from imprecision,
lumping all plaintiffs together even though they are clearly
differently situated in regard to this question.  More
importantly, their reply brief clearly limits the extent of their
request: "Mr. Lambert and Mr. Crotty therefore have the right to
attorney-client communications between Rockland and its counsel
and will keep them confidential."  (Plaintiff's Reply Memorandum
of Law in Further Support of the Motion to Compel Production of
the Bracewell Documents ("Reply") at 3).  Therefore, I need not
decide whether Mr. Del Giudice would have the right to access
attorney-client communications that post-date April 1, 2015.
However, if I were to address the question, I would find he did
not.  Pursuant to Kirby, the answer depends on whether the
plaintiffs here are "serving the interests of the corporation as
a whole."  Kirby, 1987 WL 14862, at *7.  As the defendants point
out, the plaintiffs "have repeatedly conceded that [their] claims
in this action pertain solely to their 'individual capacities.'"
(Def. Memo. at 9).  In addition, I do not see that a dispute among
members about divvying up cash distributions is akin to a
derivative action on behalf of the corporation or a suit pursuant
to Title 8, section 225 of the Delaware Code.  See Kirby, 1987 WL
14862, at *7.

16

advice provided to the business entity during the time he was a director.  To be sure, Kirby briefly addresses the question of whose benefit the plaintiff director seeks to vindicate, asking whether an action can be analogized to a shareholder's derivative claim.  Kirby, 1987 WL 14862, at *7.  However, it does so only in the context of a former director's right to attorney-client material generated after his directorship.  Id.  Moore Business Forms appears to reject the idea that a litigant's position vis à vis the corporation -- that is, whether their interests are antagonistic or not -- is relevant to the question at hand.  See Moore Business Forms, 1996 WL 307444, at *4.  Indeed, the case indicates that, where a possible conflict is foreseeable, the way to keep attorney advice to the business entity confidential from certain board members is through a separate agreement among the relevant players.  Id. at *6.  Here, based on the architecture of the Operating Agreement -- with its board divided evenly between Class A-1 designees on the one hand and Class A-2 and B designees on the other, and a fifth tie-breaking vote provided to the Weichert designee on certain issues (including the Class A-1 Preference Amount) -- the parties involved recognized the possibility of conflict.  But, as in Moore Business Forms, they failed protect against disclosure to putatively "adverse" directors.

Under Delaware law, then, Mr. Lambert, and Mr. Crotty are entitled to attorney-client communications that were generated during each of their tenures as director.[6]

D.   "At Issue" Waiver

The plaintiffs also argue that the defendants have waived any attorney-client protection over the emails included on their Privilege Log by "voluntarily and knowingly producing communications between themselves and counsel concerning the subject matter of this litigation." (Pl. Memo. at 8-9). If the plaintiffs are correct, all of the plaintiffs would have access to the documents over which the defendants had waived privilege.

---

[6] The defendants note that some of the Bracewell Documents relate only to the claims in the Proposed Complaint, which is not yet operative. (Def. Memo. at 16). That is true, and, normally, those documents would not be discoverable because they relate to claims that are not yet part of the case. See, e.g., Lifeguard Licensing Corp. v. Kozak, No. 15 Civ. 8459, 2016 WL 3144049, at *2-3 (S.D.N.Y. May 23, 2016) ("Even before 2015 amendment [to Rule 26(b)(1) of the Federal Rules of Civil Procedure], it was well-established that information relevant only to claims not yet pled was beyond the scope of discovery, at least without leave of court."). However, here, the right to the documents does not derive from the rules of relevance, but from Delaware law regarding directors' right of access to company documents and a client's right of access to its attorney's advice. See Kirby, 1987 WL 14862, at *7 ("The issue is not whether the documents are privileged or whether plaintiffs have shown sufficient cause to override the privilege. Rather, the issue is whether the directors, collectively, were the client at the time the legal advice was given."). Therefore, Rockland's attorney-client communications are available to Mr. Lambert and Mr. Crotty regardless of whether they are relevant to a claim or defense in the operative complaint.

18

The waiver the plaintiffs urge is sometimes known as "at issue" waiver.  Under Delaware law,

> [t]he at-issue waiver requires the party seeking the information to meet exacting standards and the Court's decision is to be based on fairness. The at-issue exception creates waiver of the attorney-client privilege when either the party put the communication itself at issue, or when the issue raised by the party cannot be resolved without examining the attorney-client protected communication. This is a two-part test, the information at issue must relate to "the pivotal issue in the current litigation and the need for the material must be compelling." Typically, compelling need is shown when the information is unavailable elsewhere.

Wal-Mart Stores Inc. v. AIG Life Insurance Co., No. 07C-05-171, 2008 WL 498294, at *4 (Del. Super. Ct. Jan. 14, 2008) (footnotes omitted) (quoting Williams Union Boiler v. Travelers Indemnity Co., No. 01C-11-001, 2003 WL 22853534, at *1 (Del. Super. Ct. July 31, 2003)); see also Tackett v. State Farm Fire and Casualty Insurance Co., 653 A.2d 254, 259 (Del. 1995) ("The courts of this State have refused to allow a party to make bare, factual allegations, the veracity of which are central to resolution of the parties' dispute, and then assert the attorney-client privilege as a barrier to prevent a full understanding of the facts disclosed."), overruled on other grounds by E.I. DuPont de Nemours and Co. v. Pressman, 679 A.2d 436 (Del. 1996).  Typical situations to find such waiver include actions alleging attorney malpractice, Wal-Mart Stores, 2008 WL 498294, at *4 n.18, or cases where a party

19

relies on the advice of counsel as a defense, such as when a party argues it cannot be liable because it "acted in accordance with the legal advice [] received or . . . relied on some specific advice of legal counsel," In re Comverge, Inc. Shareholders Litigation, C.A. No. 7368, 2013 WL 1455827, at *5 (Del. Ch. April 10, 2013).  Waiver may also be found where a party "partial[ly] disclos[es] [] facts protected by the privilege," and, by doing so, "place[s] the party seeking discovery at a distinct disadvantage due to an inability to examine the full context of the partially disclosed information." Tackett, 653 A.2d at 260; see also Citadel Holding Corp. v. Roven, 603 A.2d 818, 825 (Del. 1992) ("The so-called 'rule of partial disclosure' limits the waiver to the subject matter of the disclosed communication.  The exact extent of the disclosure is guided by the purposes behind the rule: fairness and discouraging use of the attorney-client privilege as a litigation weapon." (internal citation omitted)).

I understand the plaintiffs to argue that the defendants have put the Bracewell Documents at issue (1) by contending, in their opposition to this motion to compel, that Bracewell concluded that the September 2014 and January 2015 resolutions passed by the plaintiff directors were invalid (Def. Memo. at 7; Reply at 7-8), and (2) by producing some, but not all, attorney-client communications connected to Bracewell's advice regarding those

20

resolutions (Reply at 7).

The first argument is a non-starter.  The mere mention, in the facts section of an opposition to a motion to compel, that Rockland's counsel believed the resolutions to be invalid has neither put that advice at issue nor placed the plaintiffs in a position where they cannot make their case without examining the privileged communications.  The defendants have not defended against the claims in this action by asserting that they relied on Bracewell's advice and therefore should not be held liable.  The defendants' reference to that advice here, then, does not effect a waiver.  The other argument also fails.  It appears that there are a few assertedly privileged emails that, like the documents already disclosed, discuss the September 2014 and January 2015 resolutions.  (Reply at 7; Privilege Log, Entries 36-42).[7] Ultimately, however, fairness does not require that the plaintiffs examine these additional emails, because, although the validity of those resolutions is an ultimate issue in this case, the plaintiffs have not established that the defendants have or will rely on the Bracewell Documents to support their position.  Thus, the

---

[7] The plaintiffs state that there are "55 Bracewell communications pertaining to [the September 2014 and January 2015 resolutions]."  (Reply at 7).  The Privilege Log does not appear to reflect so many.

plaintiffs' "inability to examine" whether Bracewell stuck to its original analysis, modified it, reversed it, or abandoned it altogether does not put the plaintiffs at a "distinct disadvantage" in this litigation.[8]  Tackett, 653 A.2d at 260.  In short, the plaintiffs have not established that the defendants waived privilege over the Bracewell Documents.

E.    The Fiduciary Exception

The so-called "fiduciary exception" to attorney-client privilege derives from Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970), and vitiates a business entity's attorney-client privilege in certain situations.

> [W]here the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right if the stockholders to show cause why it should not be invoked in the particular instance.

Id. at 1103-04.  The Delaware Supreme Court has recently adopted the Garner doctrine "in plenary stockholder/corporation proceedings," as well as in proceedings by stockholders seeking to examine a corporation's books and records.  Wal-Mart Stores, Inc. v. Indiana Electrical Workers Pension Trust Fund IBEW, 95 A.3d

---

[8] The mere fact that the defendants' legal argument on this issue may mirror Bracewell's analysis is not sufficient to waive the privilege, as long as the defendants do not assert they are excused from liability because they relied on the advice.

1264, 1278 (Del. 2014).  Thus, under Delaware law, a stockholder (or its equivalent) may "invade the [business entity's] attorney-client privilege in order to prove fiduciary breaches by those in control of the [business entity] upon a showing of good cause." Id. at 1276.  But, for the plaintiffs, there's the rub.  This is not a claim brought by members of Rockland against Rockland alleging that the Rockland board of directors breached its fiduciary duties.  Not only have the plaintiffs insisted that the action involves the defendants "in their individual capacities, and not as managers of Rockland" (Pl. Memo. at 8), but also they do not attempt to plead a cause of action for breach of fiduciary duties against the defendants.[9]  Therefore, there is no need to inquire as to whether the plaintiffs have demonstrated good cause under Garner's non-exhaustive list of factors.[10]

_____

[9] To be sure, the operative complaint uses the phrase "fiduciary duties" once (Complaint, ¶ 19) -- as does the Proposed Complaint (Proposed Complaint, ¶ 19) -- but a breach of any such duties is not the basis for the plaintiffs' claims, which focus primarily on the defendants' breach of contract.

[10] These are:

the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but

F.    Remedy

As explained above, under Delaware law, Mr. Lambert and Mr. Crotty are entitled to the Bracewell Documents.   The other plaintiffs, however, are not.   This creates some difficulty, as all of the plaintiffs are represented by the same law firm. Therefore, before any attorney-client privileged documents are produced to Mr. Lambert and Mr. Crotty, plaintiffs' counsel must screen off those attorneys with access to these documents from those representing Mr. Del Giudice, Mr. Rubin, and Ms. Wollman. The parties shall therefore meet and confer within seven days of the date of this order to devise an acceptable procedure.   Within fourteen days of the date of this order, the defendants shall produce the Bracewell Documents to Mr. Lambert and Mr. Crotty.

Conclusion

The plaintiffs' motion to compel (Docket no. 51) is granted in part and denied in part.   The Bracewell Documents shall be produced to Mr. Lambert and Mr. Crotty after the parties have

---

not criminal, or of doubtful legality; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.

Garner, 430 F.2d at 1104.

conferred to agree on an appropriate screening procedure.   The motion is denied in all other respects.


                              SO ORDERED.


                              James C. Francis IV
                              JAMES C. FRANCIS IV
                              UNITED STATES MAGISTRATE JUDGE

Dated:       New York, New York
             September 22, 2016

Copies transmitted via ECF this date:

Douglas A. Kellner, Esq.
Thomas P. Vandenabeele, Esq.
Kellner Herlihy Getty & Friedman LLP
470 Park Ave., 7th Floor
New York, NY 10016

Jack A. Gordon, Esq.
Joshua B. Katz, Esq.
Kent, Beatty & Gordon, LLP
Eleven Times Sq.
New York, NY 10036