UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

MICHAEL DEL GIUDICE, et al.,

    Plaintiffs,

  -v-                                                                     No. 15 CV 7330-LTS-JCF

W. SCOTT HARLAN, et al.,

    Defendants.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

      Before the Court are: (1) the parties' cross-motions for summary judgment on Count One of the operative Third Amended Complaint (docket entry no. 106 ("TAC"));[1] (2) Defendants' motion for summary judgment on Count Two of the TAC; and (3) two motions by Plaintiffs for leave to amend the operative Second Amended Complaint ("SAC"), the first of which additionally seeks partial reconsideration of this Court's November 2, 2016, Memorandum Opinion and Order (docket entry no. 87 (the "November Opinion")), insofar as the Court denied Plaintiffs leave to add their proposed Fourth Cause of Action, relating to alleged breaches of Rockland's Compensation Policy, which, taken together, seek to add six new causes of action, four of which relate to alleged breaches of the Compensation Policy, and two of which relate to alleged breaches of Rockland's Operating Agreement relating to a loan agreement (see

---

[1]    The operative pleading at the time these cross-motions were filed was the Second Amended Complaint. While the cross-motions were pending, the Court granted Plaintiffs leave to file the TAC, which contains one additional cause of action, did not modify Count One, and modified Count Two only to the extent that the remedy sought was changed from a declaratory judgment to injunctive relief. Accordingly, the Court treats the cross-motions as directed to the operative TAC.

docket entry nos. 112 (Proposed Fourth Amended Complaint ("Proposed Fourth AC")) and 149, Ex. 1 (Proposed Fifth Amended Complaint ("Proposed Fifth AC"))).

The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332. The Court has considered the submissions of both parties carefully and, for the following reasons, Plaintiffs' motion for summary judgment as to Count One is denied, Defendants' motion for summary judgment as to Count One is granted, Defendants' motion for summary judgment as to Count Two is denied, and Plaintiffs' two motions for partial reconsideration and leave to amend are denied.

BACKGROUND

The Motions for Summary Judgment

The following recitation of facts is drawn from the parties' respective Local Rule 56.1 statements, as well as the governing contract in this case, the Fourth Amended and Restated Operating Agreement of Rockland Capital, LLC ("Rockland") (docket entry no. 65 (Declaration of Joseph Lambert ("Lambert Decl."), Ex. 1 (the "OA")).[2] The facts set forth below are undisputed unless otherwise noted.

Rockland is a private equity fund manager. (Def. 56.1 ¶ 2.) Plaintiffs are Class A-2 and Class B Members of Rockland. (Pl. 56.1 ¶ 4.) Defendants are Class A-1 Members of Rockland, and additionally own a share of the Class B interest. (Def. 56.1 ¶ 2.)

Rockland's OA provides for a Board of Directors (the "Board"), whose composition changed over time. (OA §§ 7.1, 7.3.) During the Initial Period (through April 1,

---

[2] See docket entry no. 63 (Plaintiffs' Statement of Undisputed Material Facts ("Pl. 56.1")); docket entry no. 75 (Defendants' Statement of Undisputed Facts ("Def. 56.1")).

2015), the Board was composed of: (1) two directors designated by Plaintiff Weichert Enterprises, LLC ("Weichert"), one of whom was to be Gerald C. Crotty; (2) two directors appointed by the Class A-2 Members; and (3) four directors appointed by the Class A-1 Members. After the Initial Period, one board seat from each of Weichert and the Class A-2 allotments was eliminated. (OA §§ 1, 7.3(b) & (c).)

Facts Relevant to Count One of the TAC

Count One of the TAC asserts a cause of action for breach of contract arising out of three putative actions of Rockland's Board to distribute Rockland's profits, the process for which is set forth in the OA. Section 6.1 of the OA provides that, "on an annual basis (or, in the Board's sole discretion, more frequently)," Rockland "shall . . . distribute all Cash Available for Distribution to the Members" in three phases: *first*, "on or before January 31 of the Fiscal Year subsequent to the Fiscal Year to which it relates, to each Class A-1 Member . . . the Class A-1 Preference Amount specified for such Class A-1 Member;" *second*, a "Catch Up" distribution to the Class A-2 and Class B Members "until the cumulative cash received by [those] members equals 49% of the cumulative cash distributed" by Rockland; and *third*, thereafter to each Member pro rata in accordance with their percentage interest. (OA § 6.1.) Before Rockland can make these distributions, accordingly, two figures must be determined: (1) Cash Available for Distribution, and (2) the Class A-1 Preference Amount.

Cash Available for Distribution is defined in Section 1 of the OA as "at any time, the cash on hand in Company accounts less the capital reserves required, as determined pursuant to Section 6.2." In turn, Section 6.2 provides that Rockland "shall establish a working capital

reserve sufficient to fund the needs of the Company in such amounts and at such times the Board deems appropriate, in its sole discretion."

The Class A-1 Preference Amount is also defined in Section 1 of the OA, as follows:

> The Class A-1 Preference Amount in respect of each Fiscal Year of the Company shall be determined prior to the start thereof by a Majority Board Vote, after a recommendation by a committee of the Board composed of four members, two of whom shall be appointed from among the Directors appointed by the Class A-2 Members and the Class B Members collectively, and two of whom shall be appointed from among the Directors appointed by the Class A-1 Members (the "Preference Committee"). The Preference Committee shall make its recommendation to the Board as to the Class A-1 Preference Amount for each Fiscal Year by November 1 of the prior Fiscal Year.

In addition, although the Class A-1 Preference Amount is to be approved by a majority of the Board, the OA provides that, during the Initial Period, Crotty would cast a tie-breaking vote solely on the determination of the Class A-1 Preference Amount. (OA § 7.6(c)(ii).)

From 2009 through early 2013, the Board approved the distribution of all Cash Available for Distribution as the Class A-1 Preference Amount. (Pl. 56.1 ¶ 6.) In late 2013, however, the process contemplated by the OA did not function. The Preference Committee did not make a recommendation to the Board as to the Class A-1 Preference Amount by November 1, 2013. (Pl. 56.1 ¶ 9.) The Board did not act by January 31, 2014, to set or pay the Class A-1 Preference Amount, as contemplated by OA Section 6.1. Instead, the parties engaged in back-and-forth negotiations over the appropriate amount. (See generally Def. 56.1 ¶¶ 13-24.)

On September 24, 2014, a document titled "Written Consent of the Managers of Rockland Capital, LLC" was signed by Del Giudice, Lambert, and Crotty, after having been circulated in draft form to all Directors on August 18 and September 22, 2014. (Pl. 56.1 ¶ 15; Def. 56.1 ¶ 26.) That document stated in a prefatory clause that, "as of January 31, 2014,

[Rockland] had approximately $2,750,000 in cash and all amounts in excess of $1,000,000 were deemed necessary in order to fund the proper operation of the Company, resulting in Cash Available for Distribution of $1,000,000." (Lambert Decl. Ex. 27, at ECF page 11 (the "September 2014 Resolution").) It further provided, also in a prefatory clause, that "as of the date hereof, [Rockland] has approximately $4,367,000 in cash and all amounts in excess of $4,117,000 are deemed necessary in order to fund the proper operation of the Company, resulting in Cash Available for Distribution of $4,117,000." (Id.) The September 2014 Resolution then set the Class A-1 Preference Amount to be distributed in 2014 at $1,000,000 plus interest, and further provided that $3,063,666.67 would be distributed as a Catch Up distribution to the Class A-2 and Class B Members. (Id.)

Upon receiving the September 2014 Resolution, Harlan asserted that the document was invalid because it improperly set Rockland's reserves. (Pl. 56.1 ¶ 17.) However, at the same time, Harlan (and the other Defendants) agreed that, as of January 2014, there was $1,000,000 of Cash Available for Distribution, and took the position that $1,000,000 was the maximum value of the Class A-1 Preference Amount that could be distributed in 2014. (Docket entry no. 74, Def.'s Response to Pl.'s Stmt. of Undisputed Material Facts ("Def. Resp."), ¶¶ 10, 11, 13, 16.) Harlan instructed Rockland's Chief Financial Officer ("CFO") not to make the distributions contemplated in the September 2014 Resolution. (Pl. 56.1 ¶ 19.)

On January 30, 2015, a second document entitled "Written Consent of the Managers of Rockland Capital, LLC" was signed by Del Giudice, Lambert, and Crotty. (Pl. 56.1 ¶ 20.) The document stated in a prefatory clause that "after taking into account the Class A-1 Distributions and Catch Up distributions approved on September 24, 2014, the Company is anticipated to have approximately $1,700,000 in cash in excess of the amounts deemed necessary

in order to fund the proper operation of the Company, resulting in Cash Available for Distribution of $1,700,000." (Lambert Decl. Ex. 27, at ECF page 19 (the "January 2015 Resolution").) The document went on to set the Class A-1 Preference Amount to be distributed in 2015 at $1,700,000, but stated that this amount was not to be distributed unless and until Rockland made the distributions contemplated in the September 2014 Resolution. (Id.) Harlan did not make the distributions contemplated in the January 2015 Resolution. (Pl. 56.1 ¶¶ 22, 24.)

On April 1, 2015, the Initial Period ended and the composition of Rockland's Board changed accordingly. That same day, Defendants Harlan, Litts, Zapalac, and Maiz signed a document titled "Written Consent of the Managers of Rockland Capital, LLC." (Docket entry no. 77, Declaration of Joshua B. Katz ("Katz Decl."), Ex. 46, at ECF page 4 (the "April 2015 Resolution").) There is no evidence before the Court to indicate that all Directors of Rockland (specifically, the Plaintiffs who were Directors at the time) were given prior notice of the April 2015 Resolution, which expressly states that it is a written consent subject to Section 7.6(d) of the OA, before it was signed. (See id.)

The April 2015 Resolution noted in a prefatory clause that the September 2014 Resolution set "a Class A-1 Preference Amount of $1,053,333 for calendar year 2013." (Id.) In a separate prefatory clause, the document noted that Rockland "had $7,388,621 of cash on hand in Company accounts as of January 31, 2015." It went on to set capital reserves as of January 31, 2015, at $1,465,000, resulting in Cash Available for Distribution of $5,932,621. (Id.) The April 2015 Resolution then set the Class A-1 Preference Amount to be distributed in 2015 at $2,544,000. (Id.) The April 2015 Resolution went on to provide for the distribution of a total of $3,597,333 to the Class A-1 Members (representing the 2014 distribution of $1,053,333 plus the 2015 distribution of $2,544,000), and $2,326,288 as a Catch Up distribution to the Class A-2 and

Class B Members. (Id. at ECF Page 5.) These amounts were distributed to the Members. (Pl. 56.1 ¶ 27.)

The parties have cross-moved for summary judgment as to Count One of the TAC, which claims that Defendants' failures to make the distributions called for in the September 2014 Resolution and the January 2015 Resolution were breaches of the OA, and that the April 2015 Resolution violated the OA's requirements for action of the Board by written consent. Count One seeks damages in the amount by which the Class A-1 Preference Distribution for 2015 set by the April 2015 Resolution exceeded that set by the January 2015 Resolution – namely, $844,000 – as well as damages based on the tax consequences to the Plaintiffs of the difference between the Catch Up distribution called for in the January 2015 Resolution and the April 2015 Resolution.

Facts Relevant to Count Two of the TAC

Rockland's OA provides that "no Class A Member . . . shall directly or indirectly, become or be engaged in or by any Competitive Business." (OA § 7.9(b).) The OA defines Competitive Business as "any Person (other than [Rockland]) engaged in the Company Business or the business of the Fund or any Company Investment Vehicle." (OA § 1.) Company Business, in turn, is defined as "(a) the business of organizing and managing investment vehicles for the purpose of purchasing, managing, restructuring, trading and/or otherwise monetizing energy and energy-related infrastructure businesses and/or related assets and/or liabilities and (b) any other lawful business that is conducted by the Company from time to time." (Id.) If a Class A Member does engage in Competitive Business, any Member or the Company may, upon

fifteen days written notice, cause Rockland to redeem the interest of the Member engaged in Competitive Business for an aggregate price of $1 and then cancel that interest. (OA § 7.9(e).)

The OA also provides that "[n]o delay or omission in exercising any right, power, or remedy accruing to any party under this Agreement upon any breach or default of any other party under this Agreement, shall impair any right, power, or remedy of such non-breaching or non-defaulting party nor shall it be construed to be a waiver of any such breach or default." (OA § 12.10.) The OA further provides that any waiver "must be in writing and signed by the party charged with such waiver and such waiver shall be effective only to the extent specifically set forth in writing." (Id.)

In approximately 2007, Plaintiff Del Giudice, a Class A Member of Rockland, invested in a private equity fund managed by Corinthian Capital Group ("Corinthian"). (Def. 56.1 ¶ 38.) Corinthian has portfolio companies in the energy sector, including a supplier of flow control products and providers of services to oil and gas clients. (Id. ¶ 41.)

In approximately 2012, Del Giudice co-founded a company called Carnegie Hudson Resources ("Carnegie Hudson"). (Id. ¶ 42.) In its marketing materials, Carnegie Hudson describes itself as a "private equity and investment banking firm" that "manages either directly or through sister-funds (Rockland Capital) over $1 billion in assets in the energy space." (Id. ¶ 43.) One of Carnegie Hudson's projects involves clean coal technology. (Id. ¶ 45.) The parties dispute whether this project was intended to lead to Carnegie Hudson's purchase of power plants. (Compare id. ¶ 45 with docket entry no. 93, Pl.'s Response to Def.'s Statement of Undisputed Material Facts ("Pl. Resp."), ¶ 45.) Defendants allege that Carnegie Hudson has pursued opportunities in the grid energy storage market, a line of business that Defendants allege

competes with a Rockland portfolio company, Beacon, an energy flywheel storage manufacturer; Plaintiffs argue that these are not competitive projects. (Def. 56.1 ¶ 48; Pl. Resp. ¶ 48.)

On October 9, 2015, Defendant Litts served Del Giudice with a notice of default pursuant to Section 7.9(e) of Rockland's OA. (Def. 56.1 ¶ 51.) Del Giudice did not divest himself of his interest in either Corinthian or Carnegie Hudson in response. (Def. 56.1 ¶ 54.) As alleged in the TAC, and not substantively disputed by the parties, on November 6, 2015, Defendant Harlan cancelled and redeemed Del Giudice's interests in Rockland and each of its funds for $1 each. (TAC ¶ 35.)

Defendants have moved for summary judgment on Count Two of the TAC, which claims that the notice of default, and the ultimate redemption of Del Giudice's interests, violated Section 7.9(e) because neither Corinthian nor Carnegie Hudson was a Competitive Business as defined by the OA.

The Motions for Leave to Amend

The Court includes here only a summary of the new allegations contained in the Proposed Fourth AC and Proposed Fifth AC, which allegations are taken as true for purposes of this motion practice, and assumes the parties' familiarity with the prior motion practice.

The Proposed Fourth AC asserts two proposed causes of action relating to the 2016 Class A-1 Preference Distribution, which were before the Court and were addressed by the November Opinion. (Proposed Fourth AC, ¶¶ 42-73.) The Proposed Fifth AC asserts two proposed causes of action relating to the 2017 Class A-1 Preference Distribution, which allegations are based on facts materially identical to Plaintiffs' allegations relating to the 2016 distribution, namely that Defendants' approved Class A-1 Preference Distributions were

breaches of the Rockland Compensation Policy because they exceeded "the amount at the 50th percentile, as determined by the expert retained by Rockland, for employees with similar roles at similarly situated private equity funds." (Proposed Fifth AC ¶ 94; see generally id. ¶¶ 74-109.)

In addition, the Proposed Fifth AC asserts proposed Eighth and Ninth Causes of Action relating to a loan taken by Rockland Power Partners, LP ("RPP"), a fund managed by Rockland. On January 31, 2017, RPP borrowed $5 million. (Proposed Fifth AC, ¶ 117.) A few days before, on January 26th, Defendant Zapalac sent the RPP investment committee a proposed written consent for RPP to enter into the loan agreement. (Id. ¶ 111.) Plaintiffs allege that only three members of the RPP investment committee (Defendants Harlan, Litts, and Maiz) signed the written consent to approve the loan. (Id.) Plaintiffs allege that the fourth vote purportedly authorizing the decision came from Defendant Zapalac, who had not formally been appointed as a replacement member of the investment committee by Rockland's Board in compliance with Section 10.2(a) of the OA, and whose vote therefore should not have been counted.[3] (Id. ¶ 116.) Plaintiffs further allege that Defendants breached their fiduciary duties by authorizing the loan in a larger than necessary amount, so as to increase the amount of cash Rockland would have available for distribution in the Class A-1 Preference Amount. (Id. ¶¶ 125-26.) Plaintiffs' proposed Eighth Cause of Action asserts that the RPP loan was a breach of the OA, and their

---

[3] In response to these allegations, Defendants have proffered extrinsic evidence in the form of three RPP written consents that predate the written consent authorizing the loan in question, and which recite that "the undersigned [including Zapalac] are members of the investment committee . . . of the Fund." (Docket entry no. 152, Ex. H (filed under seal).) These documents, which Defendants offer solely to challenge the factual allegation in the proposed amended pleading that the Board did not properly appoint Zapalac to the investment committee in compliance with the requirements of Section 10.2(a), are not referred to by and are not otherwise integral to the allegations of the Complaint. Accordingly, they are not properly before the Court in the context of this motion for leave to amend, and will not be considered here.

proposed Ninth Cause of Action asserts that Defendants breached their fiduciary duties in authorizing the loan.

DISCUSSION

The Motions for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation marks omitted)). In evaluating a motion for summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

If the moving party demonstrates a basis for summary judgment, the non-moving party must then set forth "specific facts showing that there is a genuine issue for trial" to defeat the motion. Anderson, 477 U.S. at 249 (internal quotation marks and citation omitted). If the evidence presented by the non-moving party "is merely colorable, or is not significantly probable," summary judgment may be granted. Id. at 250-51 (citations omitted). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves

create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

The Cross-Motions for Summary Judgment as to Count One

Count One of the TAC asserts a claim for breach of contract against all Defendants based on: (1) their failure to make the distributions called for in the September 2014 Resolution and the January 2015 Resolution, and (2) their making of distributions in accordance with the April 2015 Resolution. Plaintiffs assert that these actions breached Section 6.1 of the OA, insofar as Defendants failed to make timely distributions required by valid Resolutions of the Board; and Section 7.6(d), insofar as the April 2015 Resolution was adopted without prior notice as required for action by written consent. Both parties have moved for summary judgment as to Count One.

For a party to be entitled to summary judgment on a breach of contract claim under Delaware law, it must prove that a contract existed, that the contract was breached by the non-moving party, and that the breach resulted in damages. Millett v. TrueLink, Inc., 533 F. Supp. 2d 479, 487-88 (D. Del. 2008).

Plaintiffs' breach of contract theory in Count One fails because they have not established as a matter of law that the distributions set forth in the September 2014 Resolution – and therefore the distributions called for by the January 2015 Resolution, which relied on the September 2014 Resolution's distribution amounts – were authorized by the OA. As noted above, Cash Available for Distribution – the benchmark for distributions to Members – is calculated by reference to cash reserves. While Section 6.2 empowers the Board to set the Company's reserves at any time, the September 2014 Resolution was not signed by a majority of

the members of the Board, and accordingly could not have been effective to set reserves. The September 2014 Resolution references a prior determination of Rockland's reserves in stating that, as of January 31, 2014, all amounts in excess of $1,000,000 "were deemed necessary" to fund Rockland's operations. However, the September 2014 Resolution goes on to consider Rockland's cash on hand as of September 24, 2014, stating that amounts in excess of $4,117,000 "are deemed necessary" to fund Rockland's operations. The use of the present tense in this prefatory clause indicates, and there is no contrary evidence in the record, that the September 2014 Resolution was thereby purporting to set a level of reserves for Rockland pursuant to Section 6.2 of the OA. Because it was not approved by a majority of Rockland's Board, the September 2014 Resolution did not constitute a Board action setting reserves; its computation of Cash Available for Distribution was therefore baseless and ineffectual.

Accordingly, neither the September 2014 Resolution, nor the January 2015 Resolution which relied on the calculations of the September 2014 Resolution, was effective to require the Company to make distributions, except insofar as they set the $1,000,000 Class A-1 Preference Amount (an action ratified by the April 2015 Resolution). As a matter of law, Plaintiffs therefore cannot succeed on their claim for damages in Count One. Defendant's motion for summary judgment as to Count One is granted, and Count One is dismissed.

Defendants' Motion for Summary Judgment as to Count Two

Defendants have moved for summary judgment as to Count Two, which seeks recovery of Plaintiff Del Giudice's ownership interest in Rockland. Plaintiffs assert that Defendants' redemption of the interest was improper because Del Giudice did not engage in any Competitive Business. The parties' arguments on the motion for summary judgment highlight

significant disputes as to the meaning of the OA's definition of Competitive Business, and as to the nature and significance of the transactions undertaken by Carnegie Hudson and Corinthian, the two businesses in which Del Giudice invested.

Under Delaware law, a contract is ambiguous if "the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." United Rentals, Inc. v. RAM Holdings, Inc., 937 A.2d 810, 830 (Del. Ch. 2007). Here, the OA's definition of Competitive Business is ambiguous insofar as it incorporates the definition of Company Business, which includes "energy and energy-related infrastructure businesses and/or related assets and/or liabilities." Defendants assertion that this definition is broad, based on proffers of extrinsic evidence about Plaintiffs Lambert and Del Giudice's intentions during the drafting process, highlights the ambiguity of the contractual provision, as extrinsic evidence is relevant to the construction of contract provisions only if the provision is ambiguous. See GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P., 36 A.3d 776, 783 (Del. 2012) ("[T]he parol evidence rule bars the admission of evidence from outside the contract's four corners to vary or contradict . . . unambiguous language."). Plaintiffs, in response, proffer extrinsic evidence that Defendants were long aware of Del Giudice's other business activities, including prior to the adoption of the OA, and argue that the definition of Competitive Business in the OA must be construed in light of these facts.

There is a genuine dispute of material fact as to the meaning of the term Company Business, as used in the OA. Further, Defendants have not proffered undisputed facts regarding nature of the businesses at issue (Carnegie Hudson or Corinthian). Thus, even if the Court had found the contract term unambiguous, summary judgment would be inappropriate, as the parties' evidentiary submissions dispute the nature and scope of both companies' business models and

pursuits. Accordingly, Defendants' motion for summary judgment is denied as to Count Two of the TAC.

The Motions for Reconsideration and Leave to Amend

"A motion for reconsideration is governed by Local Civil Rule 6.3. In deciding a motion for reconsideration pursuant to Local Civil Rule 6.3... [t]he moving party is required to demonstrate that the Court overlooked the controlling decisions or factual matters that were put before the Court in the underlying motion." See Weber v. Multimedia Entertainment, Inc., No. 97 CV 682, 2000 WL 724003, at *1 (S.D.N.Y. June 5, 2000); see also Shrader v. CSX Trans., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). Ultimately, the decision as to whether or not to grant a motion for reconsideration is entrusted to the district court's sound discretion. See, e.g., Devlin v. Trans. Commcn's Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999).

Plaintiffs' motion for reconsideration is premised entirely on "factual and legal considerations that were before the Court on Plaintiffs' Motion to Amend." (Docket entry no. 132, Pl. Reply Mem of Law, p. 5.) In resolving that motion in the November Opinion, the Court held that Plaintiffs had failed to plead plausibly that Rockland's Compensation Policy was not followed when Defendants set the Class A-1 Preference Amount for 2015. The premise of Plaintiffs' current motion is that the Court failed to consider the import of the Compensation Policy's statement that it was the "policy" of Rockland to provide compensation at "market-based rates." The full text of the Compensation Policy was before the Court and was considered

when it decided the November Opinion, and Plaintiffs accordingly have not identified any facts the Court overlooked.

More importantly, however, Plaintiffs have not demonstrated a basis to alter the Court's conclusion that the Compensation Policy provided discretion that is not cabined, as Plaintiffs suggest, based on whether Rockland's performance met expectations. Although the Compensation Policy states generally that "the policy of Rockland" is "to compensate all employees at market based rates," the Compensation Policy specifically requires only that the "salary recommendation" for "each Class A-1 Member" be determined after consultation with an independent consultant and be set between the 50th and 75th percentiles of comparable private equity firms' compensation. Plaintiffs do not allege that these specific requirements were not met, and their arguments about the relation of the Class A-1 Preference Amount to the overall market were appropriately addressed to the committees with discretion to set the Class A-1 Preference Amount, as discussed by the Court in the November Opinion. Plaintiffs did not, and have not, identified a term in the Compensation Policy that Defendants' alleged actions violated.

Plaintiffs' motion for reconsideration is accordingly denied. Because Plaintiffs' proposed Fifth and Sixth causes of action in the Proposed Fourth AC, and the proposed Sixth and Seventh causes of action in the Proposed Fifth AC, would only have been viable had this Court granted reconsideration and reversed its conclusion in the November Opinion as to the effect of the Compensation Policy, leave to amend to add those claims is denied on the basis of futility. AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 726 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact.").

Plaintiffs' remaining motion for leave to amend would add the Eighth and Ninth Causes of Action contained in the Proposed Fifth AC, which relate to the $5 million loan taken by RPP in January 2017. Allowing the proposed amendment would be prejudicial to Defendants at this late stage in the proceedings. Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303 (S.D.N.Y.1996), aff'd, 116 F.3d 465 (2d Cir.1997) (noting that leave to amend should be denied when the opposing party would be prejudiced). The parties' cross-motions for summary judgment were fully briefed several months before the motion for leave to amend was filed. Indeed, the parties submitted joint pre-trial materials and proposed trial exhibits over a month before the motion was filed. At such a late juncture, it would be prejudicial to reopen discovery for the parties to address a matter entirely separate from the claims that have animated this litigation from its outset. See Montefiore Med. Ctr. v. Am. Protection Ins. Co., 2003 WL 21108261, at *2 (S.D.N.Y. May 14, 2003) (Swain, J.). Accordingly, leave to amend is denied as untimely, without prejudice to the assertion of those claims in a separate action in a court of competent jurisdiction.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment as to Count One is granted and Plaintiffs' motion is denied, Defendants' motion for summary judgment as to Count Two is denied, and Plaintiffs' motions for leave to amend are denied. As to the Eighth and Ninth Causes of Action in the Proposed Fifth AC, this denial is without prejudice to further separate litigation. Accordingly, Counts Two and Four of the operative TAC remain for trial.

The parties are directed to meet promptly with Magistrate Judge Francis for settlement purposes. The final pre-trial conference in this matter, currently scheduled for

September 29, 2017, is hereby adjourned to **November 2, 2017, at 10:00 a.m.**  The parties must revise their pre-trial submissions to reflect the foregoing decision, and file the revised submissions in advance of the conference as set forth in the Pre-Trial Scheduling Order (docket entry no. 21).  This Memorandum Opinion and Order resolves docket entry nos. 62, 72, 110, and 147.

    SO ORDERED.

Dated: New York, New York
       September 8, 2017

                                                  /s/ Laura Taylor Swain
                                                  LAURA TAYLOR SWAIN
                                                  United States District Judge